Megan E. Glor, OSB No. 930178
Email: megan@meganglor.com
John C. Shaw, OSB No. 065086
Email: john@meganglor.com
**Megan E. Glor, Attorneys at Law, PC**
621 SW Morrison, Suite 900
Portland, OR  97205
Telephone: (503) 223-7400
Fax: (503) 227-2530

David M. Lilienstein, SBN 218923 (*pro hac vice*)
david@dllawgroup.com
Katie J. Spielman, SBN 252209 (*pro hac vice*)
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiffs,
CHRIS W. & JENNIFER W.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| CHRIS W. & JENNIFER W.<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENCE HEALTH PLAN;  STATE OF OREGON PUBLIC EMPLOYEES BENEFIT BOARD PLAN; THE INTEL CORPORATION HEALTH AND WELFARE BENEFIT PLAN; BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS; and DOES 1 through 10,<br><br>Defendants. | Case No. 3:22-cv-00428-HZ<br><br>**PLAINTIFFS CHRIS W. AND JENNIFER W.'S THIRD AMENDED COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; ATTORNEYS' FEES AND COSTS; JURY TRIAL DEMANDED** |

1

Plaintiffs, Chris W. and Jennifer W. herein set forth the allegations of this Second Amended Complaint against Defendants PROVIDENCE HEALTH PLAN; STATE OF OREGON PUBLIC EMPLOYEES BENEFITS BOARD PLAN;BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS; THE INTEL CORPORATION HEALTH AND WELFARE BENEFIT PLAN; and DOES 1 through 10.

## PRELIMINARY ALLEGATIONS

### JURISDICTION

1. This action involves the denial of medically necessary health care by two separate health insurers, Providence Health Plan ("Providence"), and Blue Cross of California dba Anthem Blue Cross ("Anthem").

2. As set forth below, the actions of Anthem Blue Cross and the Intel Corporation Anthem HDHP Plan are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), while state law governs Defendant Providence and State of Oregon Public Employees Benefits Board Plan ("PEBB Plan").

3. Accordingly, Plaintiffs bring this action in part for relief pursuant to Section 502 (a) ("ERISA"), 29 U.S.C. Section 1132 (a). This Court has subject matter jurisdiction over the relevant claims pursuant to ERISA Section 502 (e) and (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 to the extent it involves health care claims made by Plaintiffs for employee benefits and related relief for breach of fiduciary duty under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

4. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan and enforcing Plaintiffs' rights under the terms of an employee benefit plan named as a Defendant. This action is also brought for the purpose of recovering benefits under the terms of a non-ERISA governed employee benefit plan.

### PARTIES

5. Plaintiffs are, and at all times relevant were, residents of Oregon.

6. At all relevant times, Plaintiff Chris W. was an employee of the Department of Fish and Wildlife for the State of Oregon.

7. At all relevant times, Plaintiff Jennifer W. was an employee of Intel, Corporation.

8. At all relevant times, Chris W. participated in the Public Employees Benefit Board Statewide PPO Plan ("the PEBB Plan"), sponsored by Chris W.'s employer, The State of Oregon.

9. The PEBB Plan is a healthcare service plan administered by Defendant Providence Health Plan ("Providence"). All causes of action against Providence and the PEBB Plan are brought under the relevant state law.

10. Providence is a nonprofit public benefit corporation domesticated in Oregon with its principal place of business in Beaverton, Oregon.

11. Blue Cross of California dba Anthem Blue Cross ("ANTHEM") is a health insurance provider currently transacting the business of insurance in the State of Oregon, and is the claims administrator of the Plan.

12. At all relevant times, Jennifer W. participated in Defendant the Intel Corporation Health and Welfare Benefit Plan ("the Anthem Plan"), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by Jennifer W.'s employer, Intel Corporation.

13. At all relevant times, the Anthem Plan was an insurance plan that offered, inter alia, mental health benefits for employees and their beneficiaries, including Plaintiffs' family. This action involves mental health benefits for employees and their beneficiaries, including Plaintiffs' family.

This action involves mental health claims denied by the Anthem Plan's mental health claim administrator, ANTHEM.

14. At all relevant times, the PEBB Plan was an insurance plan that offered, *inter alia*, mental health benefits for employees and their beneficiaries, including Plaintiffs' family. This action involves mental health claims denied by the PEBB Plan's mental health claim administrator, PROVIDENCE.

15. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sue said defendants by such fictitious names. Plaintiff is informed and believes and on such information and belief alleges that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

## FACTS

16. The PEBB Plan and the Anthem Plan guarantee, warrant, and promise coverage for "Medically Necessary" health services, care and treatment, including by not limited to: health care services, mental health care, and treatment at issue herein.

17. P.K.W. is Plaintiffs Chris W. & Jennifer W.'s daughter, and was, at all relevant times, a beneficiary of the PEBB Plan and the Anthem Plan.

18. At all relevant times the PEBB Plan and the Anthem Plan were in full force and effect.

19. The PEBB Plan is the primary insurance plan which P.K.W. was insured.

20. The Anthem Plan is secondary insurance plan which P.K.W. was insured.

21. Mental Health claims under the PEBB Plan were at all relevant times administered by Providence.

22. Mental Health claims under the Anthem Plan were at all relevant times administered by Anthem UM Services Inc.

23. Anthem UM Services, Inc. is a subsidiary of Blue Cross of California dba Anthem Blue Cross.

24. Providence and the State of Oregon executed a contract, sometimes referred to as an administrative service agreement, to provide health care benefits to Plaintiff Chris W. and his dependent(s). At all times relevant Plaintiff and his dependent(s) were part of a class of insureds that both Providence and the State of Oregon intended to benefit under their administrative services agreement. Plaintiff Chris W. and his dependent(s) were intended beneficiaries of both the health

care service plan provided and administered by Providence and the State of Oregon as well as the administrative services agreement.

25.   The intent of the administrative service agreement, its material terms, and legal effect thereof was to provide health care benefits and payment for medically necessary health treatment received by Plaintiff Chris W. and his dependent(s) and similarly situated members and beneficiaries of the PEBB Plan. In particular, the intent, material terms, and legal effect of the administrative services agreement was to ensure that State of Oregon employees and Plan members and beneficiaries receive medically necessary health care.

26.   As administrator of the PEBB Plan, the State of Oregon relinquished decision-making control to Providence for Plaintiff Chris W. and his dependent(s)' intended benefit

27.   Plaintiff Chris W. and his dependent(s) relied on Providence's expertise to provide coverage for medically necessary health care services, such as are at issue herein. Plaintiff and his dependent(s) could have chosen a different health insurer, but chose Providence for reasons including, but not limited to, Plaintiff and his dependent(s)' reasonable expectation that they would be treated fairly and honestly and in accordance with the generally accepted professional standards of the health care industry.

28.   Providence had the power and authority and duty to act toward Plaintiff Chris W. and his dependent(s) in a fashion that did not and would not harm Plaintiff and his dependent(s). The State of Oregon and the PEBB Plan had the same duty, as well as a duty to supervise and oversee Providence and prevent it from harming Plaintiff and his dependent(s).

29.   Providence, at all times relevant, served as the claims administrator for the PEBB Plan. Providence was vested with authority to act as claims administrator by the State of Oregon and the PEBB Plan. In its capacity as claims administrator, Providence, *inter alia*, made determinations whether to pay or deny health claims, communicated claims decisions to Plan participants and beneficiaries, and communicated with Plan participants and beneficiaries regarding claim appeal review procedures and legal rights under the Plan. As such, Providence was acting as the agent of the State of Oregon and the PEBB Plan with respect to its dealings with

Plaintiff Chris W. and his dependent(s). Providence and the PEBB Plan were joint-venturers, with one another. They ratified, encouraged, and rewarded each other for the conduct alleged herein.

30.  The PEBB Plan uses guidelines referred to as "Providence Health Plan Guidelines" when administering mental health claims.

31.  No PEBB Plan document sets forth the Providence Health Plan Guidelines.

32.  Anthem UM Services, Inc. uses guidelines referred to as "Anthem UM Guidelines" when administering mental health claims.

33.  No Plan document sets forth the Anthem UM Guidelines.

34.  Under the terms and conditions of both the PEBB Plan and the Anthem Plan, to qualify for residential treatment relating to psychiatric disorder treatment, the covered individual's symptoms or condition must meet the criteria for Medical Necessity.

35.  Medically Necessary and Medical Necessity services as defined under the PEBB Plan are "services that are necessary to diagnose or meet the reasonable health needs of the member, clinically significant, demonstrate value, improved functional capacity, recommended by a qualified practitioner, rendered in the most cost-efficient manner consistent with nationally recognized standard of care, and consistent in type, frequency and duration with scientifically based guidelines of national medical, research, or health care coverage organizations that are accepted by the Plan.

36.  Medically Necessary and Medical Necessity services as defined under the Anthem Plan are "health care services that a Physician, exercising professional clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, or disease or its symptoms, and that are: in accordance with generally accepted standards of medical practice; and clinically appropriate in terms of type, frequency, extent, site and duration and considered effective for the Member's illness, injury or disease."

37.  The Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically requires that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental illnesses at a level equal to the provision of benefits for physical illnesses.

38. P.K.W. suffers from, and was diagnosed with, *inter alia,* depressive disorder, posttraumatic stress disorder, attention-deficit/hyperactivity disorder ("ADHD"), bipolar disorder, parent-child relational problem, and suicidal ideations and attempts.

39. P.K.W. has a long history of mental illness and serious emotional disturbances, which at all times relevant, only worsened and became more acute.

40. From an early age, P.K.W. was diagnosed with ADHD, combined type and psychotic disorder, depression disorder, and anxiety disorder. She began weekly therapy to address her pervasive mental health issues.

41. As a result of her multiple mental health issues, P.K.W. exhibited severe bouts of mania and violent outbursts. She was a danger to herself and others.

42. Despite ongoing therapy and medication, P.K.W.'s mental health issues exacerbated. She repeatedly cut herself. She assaulted her peers, resulting in an expulsion from school. She frequently ran away from home.

43. At 15 years old, P.K.W. deteriorated fully. She refused to eat. She refused to shower, brush her teeth, and maintain feminine hygiene.

44. In addition to her suffering hygiene, P.K.W. expressed homicidal ideation and fanaticized torturing humans. She refused to leave the house and would throw fits of violent rage outbursts. She frequently stole sharp objects and cut herself.

45. Due to the severity of her declining mental health, P.K.W.'s mental health providers recommended, as medically necessary, that P.K.W. attend residential treatment.

46. At the recommendation of her multiple mental health providers, P.K.W. was admitted to, and attended, Parry Center for Children ("Parry"), a residential treatment center in Portland, Oregon.

47. P.K.W. completed the 6-week program at Parry and returned home and continued mental health treatment at Trillium Family Services, an outpatient day program.

48. Despite this treatment, P.K.W. decompensated again. P.K.W. self-harmed, threatened suicide, and refused to eat. Her treating mental health providers recommended that she be admitted to a residential treatment center.

49. Because of her conditions, treatment history, and based upon the recommendations of her health care providers and therapists, P.K.W. was referred and admitted to Uinta Academy ("Uinta").

50. At all times relevant, P.K.W.'s treatment at Uinta was medically necessary, in accordance with generally accepted standards of medical practice, based upon the reasoned medical opinions of her mental health providers.

51. Plaintiffs filed claims with Providence for mental health benefits for P.K.W.'s treatment at Uinta.

52. Providence denied Plaintiffs' claims.

53. Plaintiff timely appealed Providence's denials.

54. Providence denied Plaintiffs' appeals.

55. Plaintiffs also filed claims with ANTHEM for mental health benefits for P.K.W.'s treatment at Uinta.

56. ANTHEM, by and through Anthem UM Services, Inc. denied Plaintiffs' claims.

57. Plaintiffs timely appealed ANTHEM's denials.

58. Anthem UM Services, Inc. denied Plaintiffs' appeals.

59. Despite the mandates of the Federal Mental Health Parity Act, the medical necessity of P.K.W.'s treatment at Uinta based on her symptoms and diagnoses, and the medical consensus among her treating providers, Defendants Providence and ANTHEM denied all of Plaintiffs' claims and appeals.

60. Plaintiffs have exhausted all administrative remedies regarding the denial of P.K.W.'s mental health benefits.

61. As a result, Plaintiffs were forced to pay for P.K.W.'s care and treatment at Uinta from their own personal funds.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**Recovery of Benefits Due Under an ERISA Benefit Plan Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a), 29 U.S.C. Section 1132(a)**

**(Against the Intel Corporation Anthem HDHP Plan, and Blue Cross of California dba Anthem Blue Cross,**

62. Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

63. ERISA Section 502(a), 29 U.S.C. Section 1132(a) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiffs' rights under the terms of a plan.  This same section, 502(a), permits a plan participant to bring a civil action for the plan sponsor and or plan administrator's breach of fiduciary duties towards Plaintiffs specifically, and to plan participants generally.

64. At all relevant times, Plaintiffs and their daughter, P.K.W. were insured under the Anthem health care plan at issue herein, and Plaintiffs' daughter, P.K.W., met the covered health expenses and medical necessity criteria for treatment required under the terms and conditions of the Providence Plan and the Anthem Plan.

65. By denying Plaintiffs' mental health claims, Defendants the Anthem Plan and Anthem have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiffs; rights thereunder.

66. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

67. The Anthem Plan breached its fiduciary duties by:

   a. Employing Anthem to decide and handle mental health claims such as are at issue herein;

   b. Failing to scrutinize Anthem's claim handling procedures with regards to mental health claims;

   c. Allowing Anthem to use supplant the definition of medical necessity as it is commonly understood in the practice of medicine and allowing Anthem to use a definition of medical necessity that falls below reasonable standards of care in the medical community, and that violate California law;

      d.   Allowing and or failing to oversee, scrutinize and understand Anthem's use of level of care guidelines to deny medically necessary mental health claims, including but not limited to the claims that are at issue herein.

### SECOND CAUSE OF ACTION
**(Breach of Contract Against PROVIDENCE HEALTH PLAN; STATE OF OREGON PUBLIC EMPLOYEES BENEFITS BOARD PLAN; and DOES 1-10)**

68. Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in this cause of action.

69. Plaintiffs are informed and believe, and thereon allege, that Defendant the PEBB Plan entered into a written contract(s) with Providence to perform claims administration, utilization review, and provide a network of health care providers, in connection with the Plan.

70. Plaintiffs are informed and believe, and thereon allege, that Plaintiff and his dependent(s) were intended third-party beneficiaries of that contract(s) entered into by and between Providence on the one hand and the PEBB Plan on the other hand.

71. The intent of the contract(s), its material terms, and legal effect thereof was to provide health care benefits and payment for medically necessary health treatment received by P.K.W. and similarly situated members and beneficiaries of the PEBB Plan.

72. Plaintiffs are informed and believe, and thereon allege, that Defendant Providence breached the written contract by, among other things, failing to authorize urgent and medically necessary mental health care in response to claims submitted by Plaintiffs. and/or their authorized representatives.

73. As a direct and proximate result of Defendants' breaches of contract, plaintiff has suffered damages, including, without limitation, loss of benefits, loss of interest, attorney fees, and other economic damages according to proof at trial.

//
//
//
//

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing (Contract-Based Insurance Bad Faith) Against Providence Health Plan, and DOES 1 through 10)

74. Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in this cause of action.

75. At all times herein relevant, Providence agreed to act in good faith and deal fairly with Plaintiffs. Providence thereby assumed a special relationship with and fiduciary-like obligations to Plaintiffs and agreed to abide by said duties. Nevertheless, Providence refused and failed to act in good faith and deal fairly with Plaintiffs, and breached said obligations, as is set forth more particularly in this Complaint.

76. In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Providence failed and refused to provide Plaintiffs the benefits promised under the Policy, under the laws of Oregon.

77. As set forth herein, Providence breached their contract of insurance with Plaintiff's by denying medically necessary care and treatment, as set forth in this Complaint.

78. Providence engaged and continues to engage in conduct to further its own economic interest and in violation of its contractual and fiduciary obligations to Plaintiffs, including but not limited to:

79. Unreasonably denying the benefits of the Policy;

80. Misrepresenting pertinent policy provisions and coverages at issue;

81. Misrepresenting medical evidence;

82. Misrepresenting and or disregarding the opinions of treating physicians and therapists;

83. Denying benefits based on insufficient, inadequate, and biased medical analyses;

84. Repeated denials and requirements for appeals;

85. Failing to place the financial interests of its insureds on an equal par with Defendant's own financial interests;

86. Failing to objectively evaluate Plaintiffs' claim and attempting to find reasons not to pay their claim;

87. Failing to conduct a full and fair investigation;

88. Conducting a medical analysis of the claim by medical personnel who sought to provide a pretext for denying Plaintiffs' claim, instead of looking for reasons to pay the claim and instead of crediting the wealth of medical information establishing Medical necessity, as defined under the terms and conditions of the

89. Policy;

90. Failing to consider the requirements of the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for overturning Providence's claim denial(s) at issue herein; and

91. Shifting the burden of investigation onto its insureds.

92. Engaging in an unlawful pattern of practice for denying medically necessary residential treatment in order to save money and increase profits.

93. In doing the acts listed above, Providence breached the covenant of good faith and fair dealing, and engaged in unfair claim settlement practices.

94. Providence continues to engage in the aforementioned acts and said conduct and bad faith constitutes continuing bad faith to Plaintiff.

95. As a direct and proximate result of the aforementioned conduct of Providence, Plaintiff has been damaged in an amount in excess of the jurisdiction of this Court, to be determined at trial.

96. As a further, direct and proximate result of the aforementioned conduct of Providence, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

**PRAYER FOR RELIEF**

**AS TO THE ANTHEM PLAN (INCLUDING THE INTEL PLAN DEFENDANT) AND BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

97. Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

98. Declare that the Intel Plan violated its fiduciary duties to Plaintiffs and to plan members by allowing Anthem to improperly adjudicate mental health claims, as set forth herein;

99. Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

100. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

101. Provide such other relief as the Court deems equitable and just.

**AS TO ALL CAUSES OF ACTION:** For such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

### AS TO PROVIDENCE HEALTH PLAN AND STATE OF OREGON PUBLIC EMPLOYEES BENEFIT BOARD PLAN

102. Damages for the failure to provide the promised benefits under the subject contract of insurance in a sum to be determined at the time of trial, and a return of the payments which Plaintiffs paid to Uinta;

103. For costs of suit herein incurred;

104. For reasonable attorneys' fees; and

105. For such other and further relief as the Court deems just and proper.

Dated: December 2, 2022                Respectfully submitted,
                                       **DL LAW GROUP**

                                       By: s/ David M. Lilienstein
                                       David M. Lilienstein, Ca. BN 218923 (*pro hac vice*)
                                       Katie J. Spielman, Ca. BN 252209 (*pro hac vice*)
                                       Attorneys for Plaintiffs, Chris W. and Jennifer W.